MICHAEL H. BOYAMIAN, SBN 256107
michael@boyamianlaw.com
**BOYAMIAN LAW, INC.**
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone: (818) 547-5300
Facsimile: (818) 547-5678

Attorneys for Plaintiffs George Valdez,
Raul Romero, Individually and On Behalf
of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE VALDEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAMROCK FOODS COMPANY, an Arizona Corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 5:22-CV-1719-SSS-SHK<br>*[Assigned for all purposes to the Hon. Sunshine S. Sykes]*<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed Concurrently with Supporting Declarations and [Proposed] Order]*<br><br>Judge:      Hon. Sunshine S. Sykes<br>Date:       December 8, 2023<br>Time:       2:00 p.m.<br>Courtroom:  2 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 8, 2023, at 2:00 p.m. or as soon thereafter as the matter may be heard by the Honorable Sunshine S. Sykes in Courtroom 2 of the above-entitled court located at 3470 Twelfth Street, Riverside, California 92501, Plaintiffs George Valdez and Raul Romero ("Plaintiffs") will and hereby will and hereby do move this Court for an Order Granting Preliminary Approval of Class Action Settlement of the following:

1. Preliminarily approve the settlement described in the Stipulation of Class and PAGA Settlement (attached as Exhibit 1 to the Declaration of Michael Boyamian);

2. Conditionally certify, for settlement purposes only, the proposed settlement class;

3. Approve distribution of the proposed Notice of Class Action and PAGA Settlement to the settlement class;

4. Appoint Plaintiffs George Valdez and Raul Romero as the Class Representatives;

5. Appoint Boyamian Law, Inc. as Class Counsel;

6. Appoint CPT Group, Inc. as the claims administrator; and

7. Set a hearing date for final approval of the settlement.

Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declarations of Michael H. Boyamian, George Valdez, and Raul Romero, and the respective exhibits thereto; the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

Dated:  November 1, 2023            **BOYAMIAN LAW, INC.**

By: _____/s/ Michael H. Boyamian_____
Michael H. Boyamian
Attorneys for Plaintiffs George Valdez, Raul
Romero, Individually, and on Behalf of All
Others Similarly Situated

i

1

2

## **TABLE OF CONTENTS**

3  I.   INTRODUCTION ...................................................................................... 1

4  II.  FACTUAL AND THE PARTIES' CONTENTIONS ..................................... 3

5  III. PROCEDURAL BACKGROUND ................................................................ 5

6  IV.  TERMS OF THE SETTLEMENT ............................................................... 7

7       1.   Class Definition .................................................................................. 7

8       2.   Settlement Amount ............................................................................. 8

9       3.   Allocation of Payments and Distribution to Class Members .............. 8

10      4.   Attorneys' Fees and Costs .................................................................. 9

11      5.   Costs of Settlement Administration .................................................... 9

12      6.   Administration of Notice and Opt-Out Process .................................. 9

13      7.   Disputes, Requests for Exclusion, and Objections ........................... 10

14      8.   Release of Claims ............................................................................ 10

15 V.   ARGUMENT ........................................................................................... 11

16      1.   Preliminary Approval of the Settlement is Appropriate. ................... 11
             A.   The Settlement is the Product of Informed, Non-Collusion
17                Negotiation. ............................................................................. 11
             B.   The Strength of Plaintiff's Case and Defendant's Defenses,
18                and the Risk of Further Litigation Support Preliminary
                  Approval. ................................................................................. 12

19

20      2.   Arbitration ....................................................................................... 13

        3.   Preemption and Class Certification .................................................. 13
21
        4.   Meal and Rest Period Claims ........................................................... 14
22
        5.   Minimum Wage ................................................................................ 15
23
        6.   Unreimbursed Expenses ................................................................... 16
24
        7.   Other Claims .................................................................................... 16
25
        8.   The Settlement Falls Within the Range of Possible Approval. ......... 18
26           A.   The Payments to the Named Plaintiffs For Their Services to
                  the Class Is Reasonable and Routinely Awarded by Courts. ..... 19
27           B.   Plaintiff's Request for Attorneys' Fees and Costs is
                  Reasonable. .............................................................................. 22

28

    C.    The Amount Allocated for Settlement Administration is Reasonable. ...................................................................23

VI.    THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES. ..............................................24

    1.    The Proposed Classes Meet All Of The Requirements Of Rule 23(a).24
        A.    Numerosity.............................................................24
        B.    Typicality...............................................................24
        C.    Commonality..........................................................25
        D.    Adequacy ..............................................................25

    2.    The Requirements of Rule 23(b) Are Satisfied ..................................26
        A.    Common Issues Predominate.....................................26
        B.    Class Certification is a Superior Means of Resolution.............27

VII.    THE PROPOSED CLASS NOTICE IS APPROPRIATE ............................28

VIII.    CONCLUSION..............................................................................29

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:22-CV-1719-SSS-SHK

# TABLE OF AUTHORITIES

## CASES

*Amaral v. Cintas Corporation No. 2,*
    163 Cal.App.4th 1157 (2008) .......................................................17

*Armenta v. Osmose, Inc.,*
    135 Cal.App.4th 314 (2005) .........................................................16

*Bautista v. Harvest Management Sub,*
    (C.D. Cal. 2013) No. 2:12-cv-10004 ...........................................19

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) .......................................................26

*Bower v. Cycle gear, Inc.,*
    2016 WL 4439875 (N.D. Cal August 23, 2016)..........................22

*Brown v. CVS Pharmacy, Inc.,*
    2017 WL 3494297 (C.D. Cal. Apr. 2017).....................................23

*Brown v. Fed. Ex. Express Corp.*
    (C.D. Cal. 2008) 249 F.R.D. 580 .................................................15

*Ching v. Siemens Indus.,*
    (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 169279 .......................19

*Cicairos v. Summit Logistics, Inc.,*
    133 Cal.App.4th 949 (2006).........................................................27

*Cochran v. Schwan's Home Serv., Inc.*
    (2014) 228 Cal.App.4th 1137 ......................................................16

*Coinbase, Inc. v. Beilski*
    599 U.S. 736, 143 S. Ct. 1915 (2023) ...........................................6

*Crawford v. Honig,*
    37 F.3d 485, 487 (9th Cir. 1995)..................................................26

*Dawson v. Hitco Carbon Composites, Inc.,*
    2019 WL 7842550 (C.D. Cal. Nov. 2019)...................................23

*Edwards v. First Am. Corp.,*
    798 F.3d 1172 (9th Cir. 2015)......................................................26

*Employment Development Department v. Superior Court,*
    30 Cal.3d 256 (1981) ...................................................................27

*Espinoza v. Hepta Run, Inc.,*
    74 Cal. App. 5th 44 (2022) ..........................................................14

*Fernandez v. Victoria Secret Stores, LLC,*
    2008 WL 8150856 (C.D. Cal. 2008) ...........................................23

*Garcia v. Gordon Trucking, Inc.,*
    2012 WL 5364575 (E.D. Cal. Oct. 2012).....................................23

*Gasperoni v. Metabolife, International,*

iv

2000 WL 33365948 (E.D. Mich. 2000)..........................................27

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (1998)..................................................26

*Hanlon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir.1992).......................................25

*Harris v. Vector Mktg. Corp.*
(ND. Cal. 2011) 2011 U.S. Dist. LEXIS 48878 .................11

*Hightower v. JPMorgan Chase Bank, N.A.*,
2015 WL 9664959 (C.D. Cal. 2015) ............................23

*Hurst v. Buczek Enters., LLC*,
870 F.Supp.2d 810 (N.D. Cal. May 2, 2012)..................17

*In re Itel Sec. Litg.*,
89 F.R.D. 104 (N.D. Cal. 1981).................................24

*In re Southern Ohio Correctional Facility*,
175 F.R.D. 270 (S.D. Ohio 1997)..............................20

*In re Tableware Antitrust Litig.*,
484 F.Supp.2d 1078 (N.D. Cal. 2007)...................11, 18

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685, 694 (N.D. Ga. 2001).........................20

*Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*,
986 F.3d 841 (9th Cir. 2021)...................................14

*Jaimez v. DAIOHS USA, Inc.*,
181 Cal.App.4th 1286 (2010).................................27

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. Feb. 2009) .....................23

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)................................19

*Lo Re v. Chase Manhattan Corp.*,
19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979).................19

*Mayfield v. Dalton*,
109 F.3d 1423 (9th Cir. 1997)................................26

*Morton v. Valley Farm Transp., Inc.*,
2007 WL 1113999 (N.D. Cal. 2007) .........................24

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1982)..........................11, 18, 20

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999)................................20

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)................................28

*Scott v. Bimbo Bakeries USA*
(ED. Pa. 2014) No. 2:10cv03154 .............................19

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,

2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002) .............................20

*Singer v. Beckton Dickinson and Co.*,
2010 WL 2196104 (S.D. Cal. June 1, 2010) ...............................................23

*Sultan v. Medtronic, Inc.*
2012 WL 3042212 (C.D. Cal. July 23, 2012)..............................................15

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)........................................................................11

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996)......................................................................24

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ............................................................20

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................22

*Vero v. Aaron Bros.*,
(N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 178511 .....................................19

*Villegas v. J.P. Morgan Chase & Co.*,
(N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704...............................11, 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).....................................................................................25

*Wershba v. Apple Computer*,
91 Cal.App.4th 224 (2001) .........................................................................26

## STATUTES

Federal Rule of Civil Procedure 23(a) ...........................................................26, 28
Federal Rules of Civil Procedure 23(b) ................................................................29

## OTHER AUTHORITIES

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1778 (3 ed. 1998) .............................................................................................28
Complex Manual § 30.211 ....................................................................................30
Complex Manual § 30.42........................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. Case No. 5:22-CV-1719-SSS-SHK

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs George Valdez and Raul Romero ("Plaintiffs") seek preliminary and conditional approval of a settlement with Defendant Shamrock Foods Company ("Shamrock" and "Defendant").  Subject to Final Approval of this Court, Plaintiffs and Defendant have agreed to settle this action for a non-revisionary amount of one million dollars ($1,000,000.00).  The case would settle the claims of all persons employed as a Delivery Driver in California by Shamrock between August 5, 2018 to the present.

The settlement should be approved by the Court because it is truly an excellent result for the Class given Defendant's defenses to this action. With respect to class certification, Defendant contends that individualized issues would defeat predominance with respect to the reasons why a meal or rest period was missed or taken late or whether Defendant knew that off the clock work was occurring.  Defendant maintains that their policies and practices authorize drivers to take meal periods before conclusion of the fifth hour and for drivers to take rest periods throughout their routes.  They further maintain that their policies prohibit off-the-clock work and that Class Members are instructed to notify management if they work off the clock so they can be paid correctly.

Despite the Court denying Defendant's Motion to Compel Arbitration which became the subject of Defendant's interlocutory appeal, Defendant also maintains that the claims of Plaintiffs and the Settlement Class are subject to individual arbitration. With respect to the merits, Defendant argues that its meal and rest period policies authorize meal and rest periods in accordance with California law.  Defendant also argues that they do not dissuade and discourage Class Members from taking meal and rest periods by overloading their schedules with deliveries.  Further, Defendant maintains that their policies also prohibit off-the-clock work and to the extent any driver believed he or she was shorted pay, this should have been brought to the attention of management so proper payment could be made.  Defendant contends that because

drivers are informed upon hire that they may be required to drive out of state, they are exempt from state and federal overtime laws.

In addition, Defendant argues that the Federal Aviation Administration Authorization Act ("FAAAA") preempts state meal and rest period laws and state minimum wage laws with respect to truck drivers who work for interstate motor carriers, like Defendant.  The Federal Motor Carrier Safety Administration ("FMCSA") issued an opinion on December 28, 2018 which essentially served as a complete reversal to the FMCSA's December 24, 2008 decision on the (lack of) preemption of California's meal and rest break laws.  If successful, the FAAAA preemption argument would have significantly impacted and thwarted Plaintiffs' and the Putative Class' claims in the lawsuit.

Overall, the settlement was the result of arm's length, non-collusive negotiations between the Parties with the assistance of a well-respected mediator, Marc Feder.  Prior to settling the case, Plaintiffs had extensively investigated the merits of this action, conducted substantial outreach efforts to the Settlement Class, determined the damages owed to Class Members, and the likelihood of class certification.  As a result, Plaintiffs were fully informed as to what a fair settlement amount would be.

It is well within the discretion of this Court to grant preliminary and conditional approval of the proposed Settlement, which satisfies all of the criteria for preliminary settlement approval under California law.  Accordingly, Plaintiffs request that the Court: (1) provisionally and conditionally certify the proposed Settlement Class; (2) grant preliminary and conditional approval of the proposed Settlement; (3) direct distribution to the Class of the Notice, which provides the Class the opportunity to opt out of or object to the Settlement; (4) approve the filing of an Amended Complaint; and (5) schedule a final approval hearing.

The Joint Stipulation for Class Action and PAGA Settlement ("Settlement Agreement" or "Settlement"), including all exhibits (including the Amended Complaint and Proposed Class Notice attached as Exhibit A and B, respectively), is attached as

Exhibit "1" to the Declaration of Michael H. Boyamian in Support of Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement ("Boyamian Decl."), filed herewith.

## II.    FACTUAL AND THE PARTIES' CONTENTIONS

### A. Defendant Shamrock Foods Company

Shamrock is an Arizona-based company licensed by the U.S. Department of Transportation ("USDOT") as an "interstate motor carrier." Defendant is a wholesaler distributor and seller of food products and maintains locations nationwide. It touts itself as "one of the Top 10 largest foodservice distributors nationwide and serves customers throughout the Western United States." Defendant purchases these items from out-of-state vendors for the express purpose of reselling and transporting those goods across the Country, including in California. In California, Shamrock maintains two distribution centers: one in Sacramento, California and the other in Eastvale, California – just on the outskirts of Riverside, California.

### B. Plaintiffs George Valdez and Raul Romero

Mr. Valdez is a former employee of Shamrock Foods who worked out of Defendant's Eastvale warehouse/distribution center from May 2018 to February 2022. Declaration of George Valdez ("Valdez Decl.") ¶ 2. Mr. Valdez's primary work responsibility was transporting food products from Defendant's Eastvale warehouse to Shamrock Foods' corporate customers. Mr. Valdez did not interface with Defendant's customers or engaged in any sales or customer service activities. As a truck driver, he was required to drive and travel throughout the greater Southern California region to deliver food freight to customers. On a few occasions, Mr. Valdez even traveled to Arizona to fulfill deliveries. Mr. Valdez was also required to complete pre-trip and post-trip inspections, complete safety logs, load goods on the truck, and unload the goods at the delivery location. Mr. Romero was also a local delivery driver for Shamrock Foods having worked from February 14, 2022 to April 19, 2023. He, too, worked out of Defendant's Eastvale warehouse. Declaration of Raul Romero ("Romero Decl.") ¶ 2.

3

Mr. Romero performed the same work as Mr. Valdez throughout his tenure with Shamrock. Both Plaintiffs were classified as non-exempt, hourly employees throughout their tenures with Defendant.

### C. Plaintiffs' Contentions

At its core, Plaintiffs contended that Shamrock did not make meal and rest periods available to Class Members. Boyamian Decl. ¶ 9. This is due because, according to Plaintiffs, Shamrock did not schedule such meal and rest breaks, and as a result, such mandatory breaks were either skipped, taken late, or taken short. Plaintiffs further asserted that Shamrock overloads their schedules with work assignments making meal and rest periods impractical, or nearly impossible to take. *Id.* Said differently, the nature of the work performed by Plaintiffs and Class Members makes it so that meal and rest periods are illusory and as such were simply not provided to them given the high number of assignments and tight schedules. Plaintiffs contend that they were regularly directed to insert an idealized time entry for meal breaks when in reality no such meal break ever occurred. *Id*. Similarly, because Class Members were pressed for time fulfilling deliveries while on the road, performing non-driving tasks such as post-trip inspections, completing paperwork, waiting for loading, and subjecting themselves to a health screening process, were all done off-the-clock in an effort to not exceed the threshold allowable hours imposed by the Department of Transportation. *Id*.

Class Members likewise were not reimbursed for necessary business expenditures incurred while working for Defendants as they routinely had to rely on their personal cell phones in order to carry out their job duties. Through Plaintiffs' assistance and Class Counsel's efforts, Class Counsel contacted other current and former employees of Shamrock who corroborated the practices Plaintiffs encountered in which Defendants violated the applicable sections of the California Labor Code. *Id*.

### D. Defendant's Contentions

Defendant argued that this matter is not suitable for class treatment (other than for the limited purposes of effectuating settlement here) as it would invite a litany of

4

individualized issues surrounding how Class Members organized their days and conducted their daily work in delivering product for Shamrock's customers. Putting the issue of certification to the side, Shamrock maintained that no class proceedings can be held as Plaintiffs and the Settlement Class executed arbitration agreements requiring dismissal of the class allegations and proceeding with individual arbitrations.  While Defendant was unsuccessful at the trial court level in compelling arbitration, with its pending appeal, Shamrock argued that the issue of arbitration was far from settled.  As to the merits, Shamrock further argued that Plaintiffs' meal, rest, and unpaid time claims are preempted by the Federal Motor Carrier Safety Administration Act opinion of December 28, 2018 ("FMCSA").  This Opinion served as a complete reversal to the FMCSA's December 24, 2008 decision on the (lack of) preemption of California's meal and rest break laws.  This Opinion also is believed to have retroactive effect.  The bulk of Plaintiffs' claims and damages calculations all centered on Plaintiffs' and Class Members' claims for meal and rest break premium pay.   Boyamian Decl. ¶ 21-33.

## III.    PROCEDURAL BACKGROUND

The class action lawsuit was filed on August 5, 2022 in Riverside Superior Court. Defendant them removed this matter to the United States District Court, Central District of California.  Boyamian Decl. ¶ 10.  Early on, Defendant filed a Motion to Compel Arbitration which was summarily denied on the ground that Mr. Valdez was a "transportation worker" exempt under § 2 of the Federal Arbitration Act. [Dkt. 32] This prompted Defendant to file an interlocutory appeal with the Ninth Circuit [Dkt. 34] which was presently pending at the time of mediation and Shamrock 's Opening Brief due on September 26, 2023. *Id*.

Plaintiff also initiated class wide discovery simultaneously while briefing was underway on Defendant's Motion to Compel Arbitration. Boyamian Decl. ¶ 11. While the parties were waiting for the Court's ruling on Defendant's Motion, and even following the Court's ruling when Plaintiff would not stipulate to have the case stayed pending the outcome of Defendant's appeal [Dkt. 40], class discovery was well

underway which eventually led to the production of the class list. [Dkt. 39]. *Id.*

Plaintiff served both Special Interrogatories and Requests for Production of Documents, to which Defendant served objections and responses and produced thousands of pages of documents relating to Defendant's policies and operations. Defendant served, and Plaintiff responded to, its own Special Interrogatories and Requests for Documents.  Boyamian Decl. ¶ 12.

On June 23, 2023, the United States Supreme Court issued *Coinbase, Inc. v. Beilski* 599 U.S. 736, 143 S. Ct. 1915 (2023) which effectively compelled the district court to stay its pre-trial and trial proceedings while an appeal is pending. [Dkt. 57]. Subsequently, and separately, Plaintiff Raul Romero filed a Notice Letter with the Labor Workforce & Development Agency on May 23, 2023.[1] Boyamian Decl. ¶ 13.

The parties discussed resolution and agreed to private mediation during the briefing phase related to Defendant's appeal.  Plaintiffs' Counsel informally requested several categories of information from Defendant that were required in order to evaluate the potential damages and engage in meaningful settlement discussions.  Plaintiffs' Counsel closely reviewed the data provided by Defendants to determine the amount of damages potentially available to Class Members.  Class Counsel also retained the services of an expert to analyze the various, relevant time and pay data pertaining to the Class. *Id.* at ¶ 14.

Plaintiff's Counsel also performed an extensive investigation into the claims at issue, including determining the suitability of the putative class representatives' claims through interviews, background investigations, and analyses of employment files and related records.  Armed with the class list and prior to any agreement to participate in mediation, Class Counsel prepared a survey which was then sent to over 619 putative class members.  From the 619 surveys sent, 100 putative class members provided

---

[1] Plaintiff Valdez previously filed a Notice Letter with the LWDA and instituted a separate representative action in state court. However, unbeknownst to Counsel for Plaintiff, Mr. Valdez's rights under PAGA were subject to res judicata by way of an earlier settlement against Shamrock prompting dismissal of that representative action in state court.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. Case No. 5:22-CV-1719-SSS-SHK

meaningful responses to the surveys.  The survey participants were further interviewed and provided meaningful insight into their experiences while working at Shamrock and of Defendant's official and unofficial policies and practices.  Altogether, these current and former drivers of Shamrock have been unequivocal and unwavering in terms of the treatment they experienced at Shamrock, and in turn, corroborated the essence of what Mr. Valdez and Mr. Romero have alleged in this matter. (Boyamian Decl. ¶ 15.) Class Counsel identified a select group of Class Members who were prepared to submit declarations in support of class certification – if Plaintiffs were successful on appeal in affirming the Court's Order denying Defendant's Motion to Compel Arbitration.

Mediation was conducted with Marc Feder on August 31, 2023.  Counsel for the Parties fully briefed their positions to the mediator.  After a full day of extensive arms-length negotiations by and among the Parties - the Parties were able to reach this Settlement. *Id*. at ¶ 16.

Based on an independent investigation and evaluation, Plaintiffs' Counsel is of the opinion that the Settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Class Members, in light of all known facts and circumstances, including the risk of significant delay, the risk of outright denial of claims and recovery in this action, and the risk that if this matter is litigated a Class may not be certified by the Court or that it may later be decertified, the risk that Defendant will prevail on its defenses, as well as potential and additional appellate issues. *Id*. at ¶ 17.

## IV. <u>TERMS OF THE SETTLEMENT</u>

The complete details of the Settlement are contained in the Settlement Agreement, signed by the Parties, and attached as Exhibit "1" to the Boyamian Decl.  A summary of the settlement's basic terms are as follows:

### 1. Class Definition

The Class is defined as all current and former non-exempt employees employed by Defendant as Delivery Drivers, or any other similarly titled non-exempt, hourly

position, in California from August 5, 2018 through the date the Court grants preliminary approval. ¶¶3-4, Exh. 1, Boyamian Decl. Because the Settlement contemplates to resolve claims brought under the Private Attorneys General Act ("PAGA"), the PAGA Employees means all current and former non-exempt employees employed by Shamrock as drivers in California from May 24, 2022 through the date the Court grants preliminary approval. ¶¶ 9, 11, Exh. 1, Boyamian Decl.

### 2. Settlement Amount

Defendant has agreed to pay $1,000,000 on a non-reversionary basis to resolve the claims of the Class in this lawsuit. ¶ 30(c)-(d), Exh. 1, Boyamian Decl.

### 3. Allocation of Payments and Distribution to Class Members

This is not a claims-made settlement. Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement, as set forth below and as explained in the Notice. ¶ 30(e), Exh. 1, Boyamian Decl.

The Settlement Administrator will calculate the individual settlement awards to eligible Class Members. Defendant will provide the workweeks worked for each Class Member during the Class and PAGA Period to the Settlement Administrator.

In order to calculate each Class Member's pro-rata share of the settlement, the Settlement Administrator will use the following formula:

The total number of workweeks worked by a Settlement Class Member during the Class Period divided by the total sum of all covered workweeks worked by all Settlement Class Members during the Class Period multiplied by the Net Settlement Amount (not including the portion of the settlement allocated to the PAGA Settlement) results in the individual Settlement Payment for a Settlement Class Member. If there are any valid and timely submitted Requests for Exclusion or Class Members whose Notice of Class Action Settlement are returned as non-deliverable and for whom the Settlement Administrator is unable to determine a reliable address using reasonable and customary methods, the Settlement Administrator shall send such uncased, unclaimed, or abandoned checks to the California State Controller's Office on their behalf. ¶ 30(h),

Exh. 1, Boyamian Decl.

In order to calculate each PAGA Employee's pro-rata share of the settlement, the Settlement Administrator will use the following formula: The total number of pay periods worked by a PAGA Employee during the PAGA Period divided by the total sum of all covered pay periods worked by all PAGA Employees during the PAGA Period multiplied by the 25% of the PAGA Settlement Payment (or $10,000) results in the individual PAGA settlement share for a PAGA Employee. Class Members will not be permitted to exclude themselves from this portion of the Settlement. ¶ 30(i), Exh. 1, Boyamian Decl.

### 4. Attorneys' Fees and Costs

Class Counsel shall seek an award of attorneys' fees and costs from the Gross Settlement Amount not to exceed one-third (33.3%) of the Gross Settlement Amount, or $333,333.33 and reasonable litigation costs not to exceed $25,000. ¶ 30(l), Exh. 1, Boyamian Decl.

### 5. Costs of Settlement Administration

The Settlement Administrator shall be entitled to payment, from the Gross Settlement Amount, for the reasonable costs of administering this settlement. In the event that the Settlement Administrator's reasonable costs of administering this settlement exceed $20,000.00. ¶ 30(p), Exh. 1, Boyamian Decl. However, in collecting several bids from reputable third-party administrators, the parties selected CPT Group, Inc. which provided the most cost-effective bid to administer the settlement, currently not to exceed $11,000.00. Boyamian Decl. ¶ 41.

### 6. Administration of Notice and Opt-Out Process

This Settlement is not a claims-made settlement. Class Members do not need to submit claims in order to participate in the Settlement. The Notice, attached to the Settlement Agreement, as Exhibit "B", shall be sent by the Settlement Administrator to the Class Members, by first class mail, within fourteen (14) calendar days following the transmittal of the relevant information from Defendant. The Notice shall notify each

9

Class Member of their number of workweeks within the Class Period and their estimated Individual Settlement Payment.  ¶ 36(b), Exh. 1, Boyamian Decl.

### 7.     Disputes, Requests for Exclusion, and Objections

The Notice shall provide thirty (30) days from the mailing date of the Notice for each Class Member to dispute the amount of a Class Member's number of workweeks during the Class Period or the calculation of an individual Class Member's Settlement Payment.  Class Members will also have thirty (30) days from the mailing date of the Notice to opt out of the Settlement or object to the settlement. ¶ 16, Exh. 1, Boyamian Decl.

### 8.     Release of Claims

Plaintiff and all Participating Class Members shall, for the Released Claims Period, fully and finally waive, release, and forever discharge the Released Parties from all claims that were, or reasonably could have been, alleged based on the facts contained in the Operative Complaint, including claims for (1) failure to provide meal and rest periods and pay premiums; (2) waiting time penalties; (3) failure to pay wages or compensation for all hours worked, including minimum wage and overtime violations, which includes failure to pay compensation for time under Defendant's control, work off the clock, and reporting time; (4) failure to provide timely and/or accurate itemized wage statements; (5) unfair business practices and unfair competition in violation of Business and Professions Code§§ 17200, *et seq*.; (6) failure to reimburse for necessary business-related expenses, and (7) failure to maintain complete and accurate time and payroll records, including failure to maintain adequate records of all wages earned, hours worked, breaks taken, deductions made, hourly rates, and numbers of hours worked at each hourly rate. More specifically, these claims include violations of Labor Code sections 201,202,203,204,210,216, 221, 225.5, 226, 226.3, 226.7, 510, 511, 512, 551, 552, 558, 1174, 1194 to 1197.1, 1198, 1199, and 2802, and all claims under the applicable Industrial Welfare Commission Wage Orders. ¶ 13, Exh. 1, Boyamian Decl.

////

## V.    ARGUMENT

### 1.    Preliminary Approval of the Settlement is Appropriate.

The dismissal or compromise of a class action requires court approval.  Fed. R. Civ. P. 23(e).  Approval involves a two-step process in which the Court first determines whether a proposed class action settlement warrants preliminary approval and, if so, directs that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp.* (ND. Cal. 2011) 2011 U.S. Dist. LEXIS 48878, 23-24. Approval of a class action settlement rests in the discretion of the Court, which should ultimately determine whether the settlement is fundamentally fair, adequate, and reasonable to the Class.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

A court should grant preliminary approval of a settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).  Courts should also apply their discretion in light of the judicial policy favoring settlement of complex class action litigation.  *See, e.g., Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . .").  As discussed below, application of the relevant factors to this case supports preliminary approval.

### A.    The Settlement is the Product of Informed, Non-Collusion Negotiation.

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive.  *See Villegas v. J.P. Morgan Chase & Co.*, (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704, *1546. Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the

11

parties.

On August 31, 2023, the Parties attended a full-day mediation with experienced mediator, Marc Feder.  The Parties engaged in protracted negotiations and were only able to reach a figure for settlement well into the evening hours.  While a settlement figure was agreed upon by the Parties on August 31, 2023, negotiations to the specific terms of the agreement continued through September of 2023.  Plaintiffs were in receipt of a fully-executed Settlement Agreement on October 6, 2023. Boyamian Decl. ¶ 16.

Moreover, the Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case.  Class Counsel has a great deal of experience in class action litigation and focuses on employment wage and hour matters, especially within the trucking industry. Boyamian Decl. ¶¶ 2-7. The parties engaged in a comprehensive exchange of information and each conducted an extensive investigation of the factual allegations involved in this case.  Boyamian Decl. ¶¶ 14-15, 19.  It is worth emphasizing that the outreach efforts which resulted in the 100 survey participants coming forward provided a compelling picture to Class Counsel of the experiences of the Settlement Class as a whole, the alleged wage abuse they sustained while working for Defendant, lending considerable support to Plaintiffs' class claims and allegations.  Plaintiffs were also in receipt of over a thousand pages consisting of policy documents, manifests, daily driver trip sheets, and payroll summaries. *Id*.

In short, Plaintiffs entered into this Settlement with a wealth of information as to the specifics of this case, significant background experience as wage and hour class action litigator, including in the trucking industry, and having also considered the opinion of a neutral non-party who has substantial experience in dealing with such claims.

    B. <u>The Strength of Plaintiff's Case and Defendant's Defenses, and the Risk of Further Litigation Support Preliminary Approval.</u>

Plaintiffs allege that Defendant violated specific sections of the Labor Code,

including but not limited to, minimum wage, overtime, and meal and rest period laws. Further litigation carries numerous risks and obstacles for Plaintiffs and Class Members, as described below. Of particular relevance to the Court's determination of the reasonableness of the proposed Settlement is the fact that Defendant has legal and factual grounds available to defend this action. These defenses, if successful, would have severely, if not completely, reduced the damages recoverable by Class Members. Boyamian Decl. ¶ 20.

### 2.    Arbitration

While Plaintiffs were successful in resisting Defendant's attempts to strip away the class claims and have Mr. Valdez proceed to individual arbitration, the overall arbitration question remained far from over. Shortly after the Court's ruling in denying Defendant's Motion to Compel Arbitration, Defendant initiated an interlocutory appeal with the Ninth Circuit. If Shamrock was successful in convincing the Ninth Circuit that Mr. Valdez was not a "transportation worker" exempt under Section 2 of the Federal Arbitration Act, that the arbitration agreement applied to Mr. Valdez's employment and class claims, and the end result would have been no class recovery for Plaintiffs and the 750 Delivery Drivers of Shamrock. Defendant provided evidence which demonstrated that all Drivers, including Plaintiffs, executed arbitration agreements. If Defendant was successful with their appeal, this defense could have lead to the class action claims being dismissed entirely, depriving the Settlement Class of any recovery whatsoever. Boyamian Decl. ¶¶ 21-22.

### 3.    Preemption and Class Certification

Aside from arbitration, Plaintiffs and Class Members faced a real daunting possibility that their meal and rest breaks were barred on the basis of preemption by the FMCSA Order. On December 28, 2018, the FMCSA published an Order concluding that California's meal and rest break rules, codified in California Labor Code sections 226.7 and 512 and sections 11 and 12 of IWC Order 9 2001, are preempted, under 49 U.S.C. 31141(c), as applied to property carrying commercial motor vehicle (CMV)

drivers covered by the FMCSA's hours of service regulations.  The Ninth Circuit's decision in *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin*., 986 F.3d 841, 846 (9th Cir. 2021) also lends Defendant added support, whereby the FMCSA's December 28, 2018 regulations preempting California's meal and rest break laws for certain drivers were upheld.  But that very same decision by the Ninth Circuit explicitly found that individuals working in California as short-haul drivers were "not even 'covered by ... federal hours-of-service regulations.'" *Id*. at 853.  Plaintiffs argued that they and Class Members fall within the scope of the two short-haul driver exemptions on the FMCSA's regulations for the hours of service of motor carrier operators.  However, more recently, in *Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 57 (2022), the court there held that irrespective of whether Drivers are short-haul operators, the FMCSA preemption applies, i.e., "the FMCSA's reasoning supports applying preemption to short haul drivers rather than excluding them."  Boyamian Decl. ¶¶ 23-24.

Even if Plaintiffs somehow overcome the FMCSA Order, Defendant argues that class certification would still be inappropriate in light of their policies which (1) authorize meal and rest periods in accordance with California law and (2) prohibit off the clock work.  Defendant further contended that determining why a meal or rest period was missed or taken late would require numerous individualized inquires.  Defendant also argues that numerous individualized inquiries will be required to determine if management was aware that off-the-clock work was occurring. Boyamian Decl. ¶ 25.

### 4.    Meal and Rest Period Claims

Shamrock also had a number of potentially valid defenses to Plaintiffs' meal and rest period claims.  First, Defendant argues that they have facially valid, written meal and rest period policies which authorize meal and rest periods in accordance with California law.  Defendant contends that its policies instruct Class Members to follow California law regarding the provision of meal and rest periods even though Shamrock is not legally required to adhere to California law.  Indeed, Class Members must now

affirm and verify through their daily time sheets that they were provided with all statutory breaks, and further for the meal break, must specifically insert the time they took such a break.  Defendant argues that its policies, procedures, and practices coupled with the putting the onus on Class Members to insert the times of their breaks proves that Defendant made available meal and rest periods to Class Members, which is all the law requires. Boyamian Decl. ¶ 26.

Shamrock further argued that Plaintiffs and Class Members had enough time to complete all deliveries and take all legally required meal and rest periods without running afoul of federal and state hours of service restrictions on driving. As such, according to Defendant, Plaintiffs and Class Members voluntarily forwent meal and rest periods.  Voluntary omissions do not state a claim under meal period laws.  *See, e.g., Sultan v. Medtronic, Inc*. (C.D. Cal. July 23, 2012) 2012 WL 3042212, at *2; *Brown v. Fed. Ex. Express Corp*. (C.D. Cal. 2008) 249 F.R.D. 580, 585.  Defendant maintains that all Class Members had sufficient time to complete deliveries and take all legally required meal and rest periods and were not dissuaded or discouraged from doing so. Boyamian Decl. ¶ 27.

Plaintiffs' expert determined the total unpaid meal period premiums to be $6,176,690 and the unpaid rest premiums to be the same amount.  However, as stated, since the FMCSA concluded that California's meal and rest break rules are preempted by federal law and may no longer be enforced by the State of California with respect to drivers of commercial motor carriers subject to federal hours of service requirements, Plaintiffs' meal and rest period claims are likely to not have been recoverable, resulting in **zero** value. Boyamian Decl. ¶ 28.

### 5.     Minimum Wage

Plaintiffs' minimum wage claim centered on three legal theories that Plaintiffs contended violated applicable minimum wages laws, specifically, that  Defendant: (1) maintained an off-the-clock health screening process which Class Members were required to adhere in response to the novel Coronavirus; (2) required Class Members to

complete post-trip inspections, paperwork, and other related non-driving tasks based on overloading their schedules with deliveries; and (3) implemented a policy of auto-deducting 30 minutes of times for purported meal breaks when in fact Class Members were continuously working or under the control of Defendant.  Thus, any time which is not compensated automatically constituted a minimum wage violation.  *See Armenta v. Osmose, Inc*., 135 Cal.App.4th 314, 324 (2005). Boyamian Decl. ¶ 29.

With respect to the auto-deduct policy for meal breaks, Class Members' and Plaintiffs' legal theory rests on the applicability and enforceability of California's meal and rest break laws which became in serious doubt following the FMCSA Order. The bulk of Plaintiffs' damages centered on this auto-deduct policy which Plaintiffs' expert calculated to be approximately $6,664,300. Boyamian Decl. ¶ 30.

### 6.    Unreimbursed Expenses

Plaintiffs alleged that Defendant required Class Members to use their personal cell phones for work.  Defendant, however, disputes this and states that company-issued cell phones were made available to Class Members. Further, Defendant argued that a cell phone is not required to drive for Shamrock.  Instead, communication with the company can be done entirely through the on-board computer installed in every truck. *See Cochran v. Schwan's Home Serv., Inc* (2014) 228 Cal.App.4th 1137, 1144 45 ("To show liability under section 2802, an employee need only show that he or she was *required* to use a personal cell phone to make work related calls, and he or she was not reimbursed.") [Emphasis added]).  Boyamian Decl. ¶ 31.

### 7.    Other Claims

The other claims in this case inaccurate wage statements, waiting time penalties, failure to pay all wages by the appropriate pay period, and PAGA are derivative of the meal and rest period and minimum wage/overtime claims and would succeed or fail for the same reasons as these claims.  With respect to waiting time penalties under Labor Code section 203, Defendant could succeed in arguing that none of the violations were "willful" because there was a good faith dispute as to whether its pay practices were

1  unlawful.  *See Amaral v. Cintas Corporation No. 2,* 163 Cal.App.4th 1157, 1201 (2008)

2  ("A 'good faith dispute' that any wages are due occurs when an employer presents a

3  defense, based in law or fact which, if successful, would preclude any recover on the

4  part of the employee.")  The same is true with respect to the "knowing and intentional"

5  element for violations of Labor Code section 226.  *See Hurst v. Buczek Enters., LLC*,

6  No. C 11 1379, 870 F.Supp.2d 810, 829, 2012 WL 1564733, at *17 (N.D. Cal. May 2,

7  2012) (no finding of "knowing and intentional" if there is a good faith defense).

8  Boyamian Decl. ¶ 32.

9        As for the PAGA claims, Labor Code section 2699, subdivision (f), provides

10  that the trial court "may award a lesser amount than the maximum civil penalty ...

11  specified by this part if, based on the facts and circumstances of the particular case, to

12  do otherwise would result in an award that is unjust, arbitrary and oppressive, or

13  confiscatory." (§ 2699, subd. (e)(2).)  If the Court here finds that Defendant presented

14  a good faith defense to Plaintiffs' claims, it could substantially reduce the amount of

15  PAGA penalties to be awarded to the aggrieved employees. *See, e.g. Carrington v.*

16  *Starbucks Corp.* (2018) 30 Cal.App.5th 504 ("*Carrington*") (reducing the maximum

17  PAGA penalty amount by 90%, at $5 per pay period).  In *Carrington*, the California

18  Court of Appeal upheld San Diego Superior Court Judge Katherine Bacal's heavily

19  discounted award of only $5 per pay period.  In that case, during the penalty phase of

20  trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of

21  approximately $70 million. *Carrington*, Cal.App.5th at 528. The trial court instead

22  awarded only $150,000 of the maximum (the equivalent of $5 per pay period) and

23  stated that this reduction was warranted because imposing the maximum penalty

24  would be "unjust, arbitrary, and oppressive" based on Starbucks' "good faith

25  attempts" to comply with meal period obligations and because the court found the

26  violations were minimal. *Id*. at 517.  The Court of Appeal affirmed the lower court's

27  reduced award of a $150,000 penalty under PAGA. *Id*. at 529.  If the amount of $5 per

28  pay period from Carrington v. Starbucks were used, the potential recovery of civil

17

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. Case No. 5:22-CV-1719-SSS-SHK

penalties would only be $28,770 ($5 x 5,754 pay periods), which is less than what this settlement provides. Boyamian Decl. ¶ 33.

### 8.    The Settlement Falls Within the Range of Possible Approval.

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer", while taking into account the risks of continuing litigation. *See In re Tableware Antitrust Litig.* 484 F.Supp.2d at 1080. Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice* 688 F.2d at 624, (internal quotations and citation omitted). "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas*, 2012 -U.S. Dist. LEXIS 166704 at 96 (internal quotations and citations omitted).

Here, the Settlement is fair, adequate, and well within the range of possible approval. Without conceding that any adverse rulings would be justified, Plaintiffs recognize the risk of such outcomes as described above. Boyamian Decl. ¶¶ 21-33.

Based on the foregoing, the Settlement will result in a fair and reasonable award to Class members in light of the litigation risks. The net amount to be paid to the Class under the proposed Settlement (after payment of Class Counsel's attorneys' fees and costs, Settlement Administration Costs, the Class Representative Enhancement) is approximately $575,000. The average Class Member payout under this amount would be approximately $766.66. Boyamian Decl. ¶ 35. Thus, the Settlement avoids the risks of litigation while ensuring that Class Members receive substantial consideration for a release of their claims. The Settlement also affords relief to Class Members who likely

would never have filed individual claims.[2]

Under the circumstances - especially in light of the lurking arbitration issue and FMCSA Preemption Orders - the amount of the settlement is fair, adequate and reasonable. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

The plan of allocation is also fair and reasonable. The Settlement provides that the settlement fund shall be allocated in essence based on the number of workweeks by each Class Member. *See, e.g., Ching v. Siemens Indus.*, (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 169279, at *19 (granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).

A.    The Payments to the Named Plaintiffs For Their Services to the Class Is Reasonable and Routinely Awarded by Courts.

The Representative Plaintiffs seek an incentive/service award of $15,000 to George Valdez and $2,500 to Raul Romero. Plaintiffs' Counsel is of the opinion that the incentive/service awards are reasonable and proper and supported by the particular circumstances of this case and the applicable case law. Boyamian Decl. ¶¶ 36-38. Defendants do not oppose this request.

Courts have long acknowledged that active litigants are entitled to be compensated for bearing the risk and time to represent others. *Lo Re v. Chase Manhattan Corp.*, 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979). Where class representatives are provided with special compensation as part of a class settlement, the Court should ensure that it is fair and reasonable. However, "[i]t is the complete package, taken as a whole, rather than the individual component parts, that must be examined." *Officers for Justice*

---

[2] *See Scott v. Bimbo Bakeries USA* (ED. Pa. 2014) No. 2:10cv03154 (ECF No. 174) (approving a settlement of wage and hour claims for payments of $900 to each current driver and $450 to each former driver, plus $12,500 enhancement payments); *Vero v. Aaron Bros.*, (N.D. Cal. 2013) 2013 U.S. Dist. LEX1S 178511 (granting preliminary approval of settlement of wage and hour claims where the average recovery would be between approximately $28 and $45); *Bautista v. Harvest Management Sub*, (C.D. Cal. 2013) No. 2:12-cv-10004 (ECF No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-member class).

*v. Civil Service Commission of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

Indeed, incentive awards "are not uncommon and can serve an important function in promoting class action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc*., U.S.D.C. Case No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, at \*16 (S.D.N.Y. Aug. 1, 2002); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) (noting that class representatives frequently receive substantial incentive payments); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation", and cases cited therein).

The modest incentive payments to the named Plaintiffs is intended to recognize their time and efforts on behalf of the Class. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); see also Complex Manual § 30.42 n.763 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). In the *Coca-Cola* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. (200 F.R.D. at 694; *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (approving $50,000 participation award).

As provided in their concurrently filed declarations, the respective service awards to each named Plaintiff are reasonable given the risks they each undertook and bore for the benefit of other members of the Settlement Class and their level of participation in the case.  Plaintiff George Valdez initiated suit against Shamrock Foods Company on August 5, 2022. Since the beginning of this action, Plaintiff Valdez has been deeply involved in this litigation.  Early on, he participated in several meetings in order to

provide information concerning Shamrock's official and defacto practices and policies relating to scheduling, expectations, and work duties for their California-based Delivery Drivers. Valdez Decl. ¶¶ 4-5. Plaintiff Valdez provided invaluable information which helped guide Class Counsel's discovery efforts in this action. *Id.* at ¶¶ 6-7. Moreover, Plaintiff Valdez has always remained available to discuss with Class Counsel developments in the case, to answer questions Class Counsel may have had about Defendant's policies and practices, and to assist Class Counsel in understanding the types of records that Defendant has maintained. *Id.* at ¶¶ 8-9. In addition, Plaintiff Valdez spent numerous hours with Class Counsel in preparing a declaration to oppose Defendant's arbitration efforts, responses to Defendants' First Set of Special Interrogatories and Requests for Production of Documents. *Id.* at ¶ 10. Further, throughout the course of this litigation, Plaintiff Valdez has provided information to his former co-workers about the lawsuit, how they might become involved, and directing them to Class Counsel if they had questions that he could not answer. Finally, Plaintiff Valdez reviewed the settlement agreement in this action in detail before agreeing to its terms on behalf of the class. All in all, collectively over the past several years, Plaintiff Valdez estimates that he has spent at least 35 hours of his time in assisting Class Counsel in prosecuting this matter. *Id.* at ¶¶ 10-11.

Plaintiff Raul Romero was added as a named Plaintiff, on behalf of Class Members and the pool of Aggrieved Employees, in the recently filed First Amended Complaint. Plaintiff Valdez directed Plaintiff Romero to Class Counsel and Plaintiff Romero was prepared to provide a declaration in support of the Valdez action based on his experience in working as a local Delivery Driver at Defendant's Eastvale terminal. Since then, Mr. Romero has been on "stand-by" as a potential class or PAGA representative until the filing of the First Amended Complaint. Romero Decl. at ¶ 8. After Class Counsel obtained Plaintiff Romero's personnel file from Shamrock, Plaintiff Romero diligently reviewed the documents to confirm accuracy and provided consistent support to Class Counsel so that they could understand the facts of the matter. Similarly,

Plaintiff Romero was involved in the settlement process and reviewed and signed the settlement agreement, after lengthy discussions with Class Counsel. *Id.* at ¶ 4, 7.

Overall, the respective service awards are appropriate as Plaintiffs provided Class Counsel with valuable information that assisted with the prosecution of this Action. All named Plaintiffs provided detailed statements about their experience and undertook the risks associated with bringing this Action, such as being financially responsible in the event the case was unsuccessful.  Moreover, by being named representatives in the action, Plaintiffs potentially put themselves at personal risk for costs if the action were to end with a defense verdict. Furthermore, Plaintiffs have executed a far more broader and comprehensive release of their respective rights against Shamrock and have agreed to waive the provisions of California Code of Civil Procedure § 1542 releasing all claims against Defendant both known and unknown. ¶ 30(n), Exh. 1, Boyamian Decl. And, as named representatives, Plaintiffs each put their name forward on the public record at the risk of future or potential employers choosing not to hire them based on their undertaking in the action. For the reasons stated above, enhancement awards to each Class Representative are appropriate and reasonable. Boyamian Decl. ¶¶ 37-38; Valdez Decl. ¶ 12.

> B. <u>Plaintiff's Request for Attorneys' Fees and Costs is Reasonable.</u>

At final approval, Plaintiffs will seek Court-approval of attorneys' fees in the amount of one-third of the common fund, or $333,333.33, and litigation costs not to exceed $25,000.  Defendant does not oppose these requests.

Plaintiff submits that the request for attorneys' fees in the amount of one-third of the common fund is commensurate with awards given in similar cases. *See Bower v. Cycle gear, inc.*, 2016 WL 4439875, *6 (N.D. Cal August 23, 2016) (awarding 30% of common fund in wage and hour action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (granting fees of 1/3 of the common fund in wage and hour action; citing to wage and hour cases where courts approved awards ranging from 30 to 33 percent); *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, *9

22

(C.D. Cal. November 11, 2019) (awarding 35% in wage and hour action); *Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *6 *7 (C.D. Cal. Apr. 24, 2017) (awarding 30 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-4149 MMM (SH), 2008 WL 8150856 (C.D. Cal. July 21, 2008) (awarding 34 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30 percent of the settlement fund); *Garcia v. Gordon Trucking, Inc.*, No. CV 10-0324 AWI (SKO), 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (approving fees in the amount of 33 percent of the common fund); *Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("nearly all common fund awards range around 30%"); *Singer v. Beckton Dickinson and Co.*, No. 08-CV-821 IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving an attorneys' fee award of 33.33 percent).

Plaintiffs' Counsel also advanced all costs in this matter and the fees are entirely contingent in nature. Plaintiffs' Counsel has not received any compensation for the services rendered during the pendency of this action.

        C.    <u>The Amount Allocated for Settlement Administration is Reasonable.</u>

Plaintiff proposes appointing CPT Group, Inc. Class Action Settlement Administrators ("CPT Group") as the Settlement Administrator in this case. Class Counsel have significant experience with CPT Group, having worked with them numerous times over the years. Class Counsel believes CPT Group is competent and highly capable based on their work on other matters. Moreover, prior to the stay of this action, CPT Group previously assisted the Parties during discovery by serving as a neutral third party for purposes of generating a randomized sample of representative time and pay records, and did so without any issue. Boyamian Decl. ¶ 41. The Settlement Administration Costs will be paid from the Gross Settlement Amount and will not exceed $20,000.00 absent court approval. The bid Plaintiffs received from CPT

Group is presently estimated to be $11,000. Therefore, the Settlement Administration

Costs here are reasonable as compared to the value of the settlement.

## VI.    THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES.

### 1.    The Proposed Classes Meet All Of The Requirements Of Rule 23(a).

Plaintiffs seek conditional certification of the following Settlement Class: all

current and former non-exempt employees employed by Defendant as Delivery Drivers,

or any other similarly titled non-exempt, hourly position, in California from August 5,

2018 through the date the Court grants preliminary approval.  Plaintiffs submit that this

action meets all of the prerequisites for certification as a class action. "A court may

certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of

Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is

satisfied." *Morton v. Valley Farm Transp., Inc*., 2007 WL 1113999 at *3 (N.D. Cal.

2007); *see also Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).

Federal Rule of Civil Procedure 23 ("Rule 23"), paragraph (a), requires the following

four factors be met: (1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the claims

or defenses of the representative parties are typical of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class. In

short, the class must satisfy the requirements of numerosity, commonality, typicality,

and adequacy. The proposed Class easily meets all of the Rule 23 requirements.

### A.    Numerosity

Defendants have represented that the number of Class Members is approximately

750.  Boyamian Decl. ¶ 39. Joinder of 750 or more class members would, of course, be

impracticable, and thus the numerosity requirement is easily met. *See In re Itel Sec.*

*Litg*., 89 F.R.D. 104, 111-112 (N.D. Cal. 1981)

### B.    Typicality

To demonstrate typicality, Plaintiffs must show that the named party's claims

---

24

are typical of the class. Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*.

Here, Plaintiffs assert they have suffered the same injury as other Class Members as a result of the same course of conduct and that there are no unique defenses to the Plaintiffs. Valdez ¶ 2; Romero Decl. ¶ 4, 9. The typicality requirement is therefore satisfied.

C.    Commonality

Commonality requires there be questions of law and fact common to the class. Fed. R. Civ. P. 23(a)(2). A question is common to the class where it is capable of resolution on a class wide basis, meaning that determination of its truth or falsity will directly resolve an issue that is central and valid to each one of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Notably, a single common question is sufficient to satisfy Rule 23(a)(2). *Id*. at 359. The commonality requirement is met in this case because resolution of the class claims depends on common questions of law and fact about the Class Members' employment with Shamrock. For instance, Plaintiffs' primary claim was the allegation that Defendant overloaded Driver's schedules with deliveries and assignments resulting in a variety of Labor Code violations including meal and rest period violations, minimum wage violations, and unpaid time. This policy or practice led to several other derivative violations, including claims for inaccurate wage statements, waiting time penalties, and penalties under the Private Attorneys General Act. Thus, the commonality requirement is met.

D.    Adequacy

Because Class Members who are not named parties are bound by a judgment,

25

due process is satisfied only where the absent class members' interest are adequately protected by the representative class members. *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994). The test is whether the named plaintiffs have interests that conflict with, or are antagonistic to, the interests of the other class members. *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997). No such conflict of interest exists here.

The named Plaintiffs have an interest in proving liability against Defendant for each of the claims alleged in the Complaint, and this interest is identical to the interest of each absent Class Member. Valdez ¶ 2; Romero Decl. ¶ 4, 9. Further, Plaintiffs' Counsel have significant experience representing classes of employees in wage and hour litigation, and have reached an adequate settlement of this class action.

### 2. The Requirements of Rule 23(b) Are Satisfied

In addition to meeting the requirements outlined in Rule 23(a), the parties seeking class certification must also show the action is maintainable under Rule 23(b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (1998). Under Rule 23(b)(3) there must be a showing that questions of law or fact predominate over individual questions and that a class action is a superior means of resolving the dispute. Fed. R. Civ. P. 23(b)(3).

### A. Common Issues Predominate

Common issues will predominate over individual issues if the common issues "represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. First Am. Corp*., 798 F.3d 1172, 1182 (9th Cir. 2015) quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1778 (3 ed. 1998). Class certification for purposes of settlement is proper even if minor factual differences exist between the class members. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Moreover, the law is clear that the class certification is appropriate where the plaintiff challenges a common policy or practice which is applicable to all class members. *See Wershba v. Apple Computer*, 91 Cal.App.4th 224, 238 (2001) (Where all "class members have suffered a common alleged wrong", class action is appropriate); *Gasperoni v. Metabolife, International*, 2000 WL 33365948, *6

26

(E.D. Mich. 2000) (holding where all plaintiffs allege a common method of misrepresentation and all allege the same legal claim, class action is appropriate); *Employment Development Department v. Superior Court*, 30 Cal.3d 256, 265 (1981) (stating class action appropriate where a large number of applicants have been harmed on the basis of an invalid administrative practice).

   In this case, Plaintiffs' claims arise from Shamrock's common policies and practices.  For example, Plaintiffs assert that Defendant has a uniform policy and practice of failing to provide mandated meal and rest periods by overcommitting Drivers' schedules with deliveries and assignments.  To prove this, Plaintiffs intend to rely on Defendants' records, namely, daily assignment sheets and manifests which reveal the number of scheduled stops and deliveries, and whether the schedules themselves realistically accounted for mandated breaks during a shift.  Because Shamrock's wage and hour policies appear to be paper-compliant, Plaintiffs also intended to rely on significant anecdotal evidence by way of representative testimony and surveys from absent class members describing the nature of the work they performed and their experience while working at Shamrock. A number of the claims plead in the complaint are derivative of this policy and practice and therefore can be proved based on representative testimony and to some extent, Defendant's own records.

   These facts are sufficient to certify a class of drivers for meal and rest period violations. *See e.g., Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286, 1294 (2010) (employer scheduled work routine that made it virtually impossible as a practical matter for employees to take rest breaks and still complete their assigned work); *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 962-963 (2006) ("[T]he defendant's obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming that the meal periods were taken, because employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.'")

   B.   Class Certification is a Superior Means of Resolution

   Class certification must be a superior means of resolution. Fed. R. Civ. P.

27

23(b)(3). In this case, certification of the Settlement Class will permit the small claims of over 750 Class Members – virtually all of which would otherwise have to be resolved in individual arbitration - to be resolved at the same time. Thus, the individuals will have the opportunity to obtain redress for claims that may otherwise be too insignificant to warrant individual litigation. Additionally, certification will also eliminate the possibility of repetitive litigation. Furthermore, the members of the Settlement Classes have the opportunity to control the litigation by electing to exclude themselves from the settlement. Therefore, class wide resolution is a superior method of resolving the dispute.

## VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

The Parties' notice plan comports with the requirements of Rule 23(e)(1) and entails mailing the notice to all known and reasonably ascertainable Settlement Class Members based on records maintained by Defendant. *See* Exh. B to Settlement Agreement, Exh. 1 to Boyamian Decl. Defendant has agreed to provide the addresses for all settlement Class Members to the Settlement Administrator.  To the extent any of the addresses are no longer current, a "skip trace" will be conducted to locate the particular Class Member.

As set forth by the Ninth Circuit, class action "[s]ettlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably".  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  The proposed Notice here fulfills these criteria.  It provides information on the meaning and nature of the proposed Settlement Class; the terms and provisions of the Settlement; the relief the Settlement will provide Settlement Class Members; how Class Members will receive their portion of the settlement proceeds; the application by Plaintiff's Counsel for reimbursement of costs and attorneys' fees; the date, time and place of the final Settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting comments and objections.

The Notice also fulfills the requirement of neutrality in class notices.  It

summarizes the proceedings to date, and the terms and conditions of the settlement in an informative and coherent manner in compliance with the Complex Manual's statement that "the notice should be accurate, objective, and understandable to class members." *See* Complex Manual § 30.211. The Notice clearly states that the Settlement does not constitute an admission of liability by Defendant, and recognizes that the Court has not ruled on the merits of the action. It also states that the final settlement approval decision has yet to be made. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Fed. R. Civ. P. 23(c)(2); 23(e); Complex Manual §§ 30.211, 30.212.

## VIII. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed class action settlement.

Dated:  November 1, 2023                    **BOYAMIAN LAW, INC.**


By:  _____/s/ Michael H. Boyamian_____
Michael H. Boyamian
Attorneys for Plaintiffs George Valdez and Raul
Romero Individually and on Behalf of the
Settlement Class

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. Case No. 5:22-CV-1719-SSS-SHK