1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL H. BOYAMIAN, SBN 256107
michael@boyamianlaw.com
**BOYAMIAN LAW, INC.**
550 No. Brand Blvd., Suite 1500
Glendale, California 91203
Telephone: (818) 547-5300
Facsimile: (818) 547-5678

Attorneys for Plaintiffs George Valdez,
Raul Romero, Individually and On Behalf
of All Similarly Situated Individuals

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

GEORGE VALDEZ, an individual,
RAUL ROMERO, an individual, on
behalf of themselves and all other
similarly situated individuals,

              Plaintiffs,

v.

SHAMROCK FOODS COMPANY, an
Arizona Corporation, and DOES 1
through 25, inclusive

              Defendants.

Case No. 5:22-CV-1719-SSS-SHK
(*Assigned for all purposes to the Hon. Sunshine S. Sykes*)

**CLASS ACTION**

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed Concurrently with Plaintiffs' Motion for Attorneys' Fees, Costs, and Claims Administration Costs, Supporting Declarations, and [Proposed] Order*]

Date:    March 29, 2024
Time:    2:00 p.m.
Ctrm:    2
Before:  Hon. Sunshine S. Sykes

**NOTICE TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2024 at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Courthouse located at 3470 Twelfth Street, Riverside, California 92501, before the Honorable Sunshine S. Sykes, Plaintiffs George Valdez and Raul Romero ("Plaintiffs") will and hereby do move this Court for an Order Granting Final Approval of Class Action and PAGA Settlement.

Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declaration of Michael H. Boyamian and the respective exhibits; the Declaration of Kusay Ghenniwa re: Notice and Claims Administration ("CPT Group Decl."); the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

Plaintiffs respectfully request that the Court: (1) grant final approval of the proposed Settlement[1]; (2) certify the Class for settlement purposes; (3) find that the Notice was the best practicable notice under the circumstances and satisfied all Constitutional and other requirements; (4) confirm Settlement Class Members who have submitted timely requests for exclusion; (5) confirm as final the Court's preliminary appointment of settlement Class Counsel; (6) confirm as final the Court's preliminary appointment of Plaintiffs as class representatives; (7) grant service enhancement awards to class representatives George Valdez and Raul Romero in the amounts of $10,000.00 and $5,000, respectively (collectively, not to exceed $17,500); (8) grant an award of attorneys' fees[2] of $333,333.33 (33-1/3

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Michael H. Boyamian in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Boyamian Dec."), filed herewith.

[2] Class Counsel is concurrently filing and serving its Notice of Motion and Unopposed Motion for Class Counsel's Attorneys' Fees, Costs, Claims

percent of the total settlement sum) and litigation costs of $12,601.91, for a total fee and expense award of $345,287.82; (9) grant payment to the Labor Workforce and Development Agency in the amount of $30,000 (75% of the $40,000 allocated for civil penalties pursuant to the Private Attorneys General ("PAGA")) for penalties under the Labor Code pursuant to PAGA ("PAGA penalties"); (10) award the settlement administrator, CPT Group, Inc., $12,000 for claims administration expenses; (11) dismiss the action pursuant to the terms and conditions of the Settlement Agreement; (12) retain jurisdiction over the enforcement and implementation of the Settlement Agreement; and (13) issue related orders as necessary.

Respectfully Submitted,

Dated: March 1, 2024                    BOYAMIAN LAW, INC.

By:    /S/ Michael H. Boyamian
       MICHAEL H. BOYAMIAN
       Attorneys for Plaintiffs and the Putative Class

---

Administration Expenses, and Service Award to the Class Representative on which is scheduled to be heard on March 29, 2024 in conjunction with Plaintiffs' Motion for Final Approval.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ............................................... 2

    A.  Defendant Shamrock Foods Company ................................. 2

    B.  Plaintiffs George Valdez and Raul Romero ....................... 2

    C.  Plaintiffs' Contentions ....................................................... 3

    D.  Defendant's Contentions ..................................................... 4

III. PROCEDURAL HISTORY ................................................. 5

IV. TERMS OF THE SETTLEMENT ...................................... 7

V.  NOTICE PROCESS, OBJECTIONS AND EXCLUSIONS ......................... 8

VI. LEGAL ARGUMENT .......................................................... 9

    A.  The Settlement Meets the Criteria for Final Approval. ...................... 9

        1. The Settlement is Fair Given the Strength of Plaintiffs'
Case and the Risk, Expense, Complexity, and Likely
Duration of Litigation. ...................................................... 10

        2. The Settlement Consideration and Allocation are Fair. .................. 13

        3. The Settlement Reflects the Informed Views of
Experienced Counsel and Is the Product of Serious, Arms-
Length Negotiations Conducted After Extensive Discovery
and Investigation. ............................................................. 15

        4. The Lack of Meaningful Opposition by the Class Supports
Approval. .......................................................................... 16

    B.  Confirmation of the Court's Provisional Class Certification is
Appropriate ...................................................................... 17

    C.  The Court-Ordered Notice Program Is Constitutionally Sound. ........ 18

VII.  CONCLUSION: THE COURT SHOULD GRANT PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF THIS SETTLEMENT.......... 19

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Cases**

*Balderas v. Massage Envy Franchising, LLC* (N.D.Cal. July 21, 2014) 2014 U.S.
    Dist. LEXIS 99966 ..................................................................16

*Barcia v. Contain–A–Way, Inc.* (S.D. Cal. 2009) 2009 U.S. Dist. LEXIS 17118 .....18

*Bautista v. Harvest Management Sub* (C.D. Cal. July 7, 2014)................................16

*Burns v. Elrod* (7th Cir. 1985) 757 F.2d 151................................................19

*Churchill Vill., L.L.C.*, 361 F.3d.........................................................20

*Churchill Vill., LLC. V. Gen. Elec.* (9th Cir. 2004) 361 F.3d 566 ..........................11

*Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268..........................11

*Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156 ......................................20

Fed. R. Civ. P. 23(C)(2)..................................................................20

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................20

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011 ..................................11

*In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F. Supp. 2d 1036...........18

*Ma v. Covidien Holding, Inc.* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359 ..11, 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523 18

*O'Sullivan v. AMN Services, Inc.* (N.D. Cal. Feb. 7, 2014) ......................................16

*Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948..................................11

*Scott v. Bimbo Bakeries USA* (E.D. Pa. March 5, 2014) ......................................16

*Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370 ..............................20

*Villegas v. J.P. Morgan Chase & Co.*,
    (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704.....................................11, 15, 20

**Rules**

Fed. R. Civ. P. 23(b)(3) ........................................................................... 16, 17

Fed. R. Civ. P. 23(c)(2) .................................................................................. 18

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 17

Fed. R. Civ. P. 23(e)(1) .................................................................................. 17

Fed. R. Civ. P. 23(e)(2) .................................................................................... 9

**Other Authorities**

Manual for Complex Litigation (Fourth) section 21.61 (2004) ..................... 9

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    **INTRODUCTION**

On December 21, 2023, this Court granted preliminary approval of the class action settlement reached in this action between Plaintiffs George Valdez and Raul Romero ("Plaintiffs") and Defendant Shamrock Foods Company ("Defendant" or "Shamrock") (Dkt. 69) ("Dec. 21 Order").  Plaintiffs now seek final approval of the proposed Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

Plaintiffs allege that they and other Putative Class Members were denied basic protections under the California Labor Code while working and performing truck driving services for Defendant.  Plaintiffs alleged claims for unpaid wages, minimum wages, overtime pay, failure to provide meal and rest periods, failure to reimburse necessary business expenditures, interest thereon, wage statement and waiting time penalties, and other equitable relief, as well as reasonable attorneys' fees and costs.  After thorough investigation, substantive discovery, and hard fought negotiations, Plaintiffs and Defendant entered into the Settlement to resolve this class action.  The Settlement includes a Gross Settlement Amount of One Million Dollars and Zero Cents ($1,000,000.00), which includes attorneys' fees and costs, PAGA penalties, enhancement awards to Plaintiffs, the class representatives, and court-approved costs of settlement administration.

Notice was mailed to 782 Class Members on January 16, 2024.  As explained in detail below, the notice procedures here were adequate.

The reaction of the Class has been overwhelmingly positive.  The postmark deadline for opt-outs was February 15, 2024.  Class Members who had notice packets re-mailed to them had until a maximum of February 28, 2024, to file any opt-outs, disputes, or objections.  To date, the settlement administrator, CPT Group, Inc., has received two (2) requests for exclusion from the Settlement.  CPT has received two (2) objections to the Settlement but as explained further below, such

objections are incomplete, invalid, and should be voided as the purported objectors do not explain or provide any basis as to their objections.  CPT has also not received any disputes concerning the calculation of the applicable workweeks used for determining Class Members' individual settlement share.  Therefore, 780 Class Members have chosen to participate in this Settlement.

The near-100 percent participation rate in a Class comprised of over seven hundred and eighty individuals confirms that the Settlement is reasonable and in the best interests of the Class.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Defendant Shamrock Foods Company

Shamrock is an Arizona-based company licensed by the U.S. Department of Transportation ("USDOT") as an "interstate motor carrier." Defendant is a wholesaler distributor and seller of food products and maintains locations nationwide.  It touts itself as "one of the Top 10 largest foodservice distributors nationwide and serves customers throughout the Western United States." Defendant purchases these items from out-of-state vendors for the express purpose of reselling and transporting those goods across the Country, including in California.  In California, Shamrock maintains two distribution centers: one in Sacramento, California and the other in Eastvale, California – just on the outskirts of Riverside, California.

### B.    Plaintiffs George Valdez and Raul Romero

Mr. Valdez is a former employee of Shamrock Foods who worked out of Defendant's Eastvale warehouse/distribution center from May 2018 to February 2022. Declaration of George Valdez ("Valdez Decl.") (Dkt. 63-2) ¶ 2. Mr. Valdez's primary work responsibility was transporting food products from Defendant's Eastvale warehouse to Shamrock Foods' corporate customers. Mr. Valdez did not

interface with Defendant's customers or engaged in any sales or customer service activities. As a truck driver, he was required to drive and travel throughout the greater Southern California region to deliver food freight to customers. On a few occasions, Mr. Valdez even traveled to Arizona to fulfill deliveries. Mr. Valdez was also required to complete pre-trip and post-trip inspections, complete safety logs, load goods on the truck, and unload the goods at the delivery location.  Mr. Romero was also a local delivery driver for Shamrock Foods having worked from February 14, 2022 to April 19, 2023. He, too, worked out of Defendant's Eastvale warehouse. Declaration of Raul Romero ("Romero Decl.") (Dkt. 63-3) ¶ 2. Mr. Romero performed the same work as Mr. Valdez throughout his tenure with Shamrock.  Both Plaintiffs were classified as non-exempt, hourly employees throughout their tenures with Defendant.

### C.    <u>Plaintiffs' Contentions</u>

At its core, Plaintiffs contended that Shamrock did not make meal and rest periods available to Class Members.  Boyamian Decl. ¶ 9.  This is due because, according to Plaintiffs, Shamrock did not schedule such meal and rest breaks, and as ar result, such mandatory breaks were either skipped, taken late, or taken short. Plaintiffs further asserted that Shamrock overloads their schedules with work assignments making meal and rest periods impractical, or nearly impossible to take. Id.  Said differently, the nature of the work performed by Plaintiffs and Class Members makes it so that meal and rest periods are illusory and as such were simply not provided to them given the high number of assignments and tight schedules. Plaintiffs contend that they were regularly directed to insert an idealized time entry for meal breaks when in reality no such meal break ever occurred.  Id. Similarly, because Class Members were pressed for time fulfilling deliveries while on the road, performing non-driving tasks such as post-trip inspections, completing paperwork, waiting for loading, and subjecting themselves to a health screening process, were all

done off-the-clock in an effort to not exceed the threshold allowable hours imposed by the Department of Transportation.  Id.

Class Members likewise were not reimbursed for necessary business expenditures incurred while working for Defendants as they routinely had to rely on their personal cell phones in order to carry out their job duties.  Through Plaintiffs' assistance and Class Counsel's efforts, Class Counsel contacted other current and former employees of Shamrock who corroborated the practices Plaintiffs encountered in which Defendants violated the applicable sections of the California Labor Code. Id.

### D.    **Defendant's Contentions**

Defendant argued that this matter is not suitable for class treatment (other than for the limited purposes of effectuating settlement here) as it would invite a litany of individualized issues surrounding how Class Members organized their days and conducted their daily work in delivering product for Shamrock's customers. Putting the issue of certification to the side, Shamrock maintained that no class proceedings can be held as Plaintiffs and the Settlement Class executed arbitration agreements requiring dismissal of the class allegations and proceeding with individual arbitrations.  While Defendant was unsuccessful at the trial court level in compelling arbitration, with its pending appeal, Shamrock argued that the issue of arbitration was far from settled.  As to the merits, Shamrock further argued that Plaintiffs' meal, rest, and unpaid time claims are preempted by the Federal Motor Carrier Safety Administration Act opinion of December 28, 2018 ("FMCSA").  This Opinion served as a complete reversal to the FMCSA's December 24, 2008 decision on the (lack of) preemption of California's meal and rest break laws.  This Opinion also is believed to have retroactive effect.  The bulk of Plaintiffs' claims and damages calculations all centered on Plaintiffs' and Class Members' claims for meal and rest break premium pay.   Boyamian Decl. ¶ 21-33.

### III.    <u>PROCEDURAL HISTORY</u>

The class action lawsuit was filed on August 5, 2022 in Riverside Superior Court. Defendant them removed this matter to the United States District Court, Central District of California.  Boyamian Decl. ¶ 10.  Early on, Defendant filed a Motion to Compel Arbitration which was summarily denied on the ground that Mr. Valdez was a "transportation worker" exempt under § 2 of the Federal Arbitration Act. [Dkt. 32] This prompted Defendant to file an interlocutory appeal with the Ninth Circuit [Dkt. 34] which was presently pending at the time of mediation and Shamrock 's Opening Brief due on September 26, 2023. Id.

Plaintiffs also initiated class wide discovery simultaneously while briefing was underway on Defendant's Motion to Compel Arbitration. Boyamian Decl. ¶ 11. While the parties were waiting for the Court's ruling on Defendant's Motion, and even following the Court's ruling when Plaintiff would not stipulate to have the case stayed pending the outcome of Defendant's appeal [Dkt. 40], class discovery was well underway which eventually led to the production of the class list. [Dkt. 39]. Id.

Plaintiff served both Special Interrogatories and Requests for Production of Documents, to which Defendant served objections and responses and produced thousands of pages of documents relating to Defendant's policies and operations. Defendant served, and Plaintiff responded to, its own Special Interrogatories and Requests for Documents.  Boyamian Decl. ¶ 12.

On June 23, 2023, the United States Supreme Court issued *Coinbase, Inc. v. Beilski* 599 U.S. 736, 143 S. Ct. 1915 (2023) which effectively compelled the district court to stay its pre-trial and trial proceedings while an appeal is pending. [Dkt. 57]. Subsequently, and separately, Plaintiff Raul Romero filed a Notice Letter with the Labor Workforce & Development Agency on May 23, 2023.  Boyamian Decl. ¶ 13.

The parties discussed resolution and agreed to private mediation during the briefing phase related to Defendant's appeal.  Plaintiffs' Counsel informally requested several categories of information from Defendant that were required in

order to evaluate the potential damages and engage in meaningful settlement discussions. Plaintiffs' Counsel closely reviewed the data provided by Defendants to determine the amount of damages potentially available to Class Members. Class Counsel also retained the services of an expert to analyze the various, relevant time and pay data pertaining to the Class. *Id*. at ¶ 14.

Plaintiff's Counsel also performed an extensive investigation into the claims at issue, including determining the suitability of the putative class representatives' claims through interviews, background investigations, and analyses of employment files and related records. Armed with the class list and prior to any agreement to participate in mediation, Class Counsel prepared a survey which was then sent to over 619 putative class members. From the 619 surveys sent, 100 putative class members provided meaningful responses to the surveys. The survey participants were further interviewed and provided meaningful insight into their experiences while working at Shamrock and of Defendant's official and unofficial policies and practices. Altogether, these current and former drivers of Shamrock have been unequivocal and unwavering in terms of the treatment they experienced at Shamrock, and in turn, corroborated the essence of what Mr. Valdez and Mr. Romero have alleged in this matter. (Boyamian Decl. ¶ 15.) Class Counsel identified a select group of Class Members who were prepared to submit declarations in support of class certification – if Plaintiffs were successful on appeal in affirming the Court's Order denying Defendant's Motion to Compel Arbitration.

Mediation was conducted with Marc Feder on August 31, 2023. Counsel for the Parties fully briefed their positions to the mediator. After a full day of extensive arms-length negotiations by and among the Parties - the Parties were able to reach this Settlement. *Id*. at ¶ 16.

As part of the settlement, a Joint Stipulation was filed to administratively reopen this case and lift the stay. The Joint Stipulation also sought to add Raul

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Romero as a named plaintiff in this matter. This Court granted the parties' Joint Stipulation on October 12, 2023 (Dkt. 63). Plaintiffs filed their First Amended Complaint and Defendant answered the FAC on   Plaintiffs subsequently moved for preliminary approval of the proposed class action and PAGA settlement. The Court conducted a hearing on December 13, 2023 on Plaintiffs' Motion for Preliminary Approval. The Court was inclined to grant preliminary approval, however, the Court ordered the parties to amend the class notice to include an objection form and opt-out form (Dkt. 67), which the parties subsequently did. The Court ultimately granted preliminary approval of this settlement on December 21, 2023. (Dkt. 69). (Boyamian Decl. ¶ 17.)

Based on an independent investigation and evaluation, Plaintiffs' Counsel are of the opinion that the Settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Class Members, in light of all known facts and circumstances, including the risk of significant delay, the risk of outright denial of claims and recovery in this action, and the risk that if this matter is litigated a Class may not be certified by the Court or that it may later be decertified, the risk that Defendant will prevail on its defenses, as well as potential appellate issues. Boyamian Dec ¶ 18.

## IV.   **TERMS OF THE SETTLEMENT**

The complete Joint Stipulation of Class Action and PAGA Settlement ("Settlement Agreement") is attached as Exhibit 1 to the Boyamian Decl.

The key terms of the settlement are as follows: Defendant will pay $1,000,000 to the Class to settle this lawsuit. Settlement, § 30(c). There are 780 participating Class Members. CPT Decl., ¶ 13. Plaintiff's Counsel will request attorney fees in the amount of $333,333.33. Settlement, § 30(l). Plaintiffs will request to be reimbursed for costs in an amount not to exceed $25,000 (the actual total costs

incurred by Class Counsel is $12,601.91). *Id*.; Boyamian Decl. ¶¶ 44, Exh. 4.  Class Counsel will request enhancement awards of $10,000 for George Valdez and $5,000 for Raul Romero (collectively $15,000).  Settlement, § 30(m); Boyamian Decl. ¶¶ 45, 48.

Any settlement funds that ultimately remain unclaimed will *not* revert to Defendant, but instead the unclaimed residual will be paid to the State of California, California Department of Industrial Relations Unpaid Wage Fund, in the Class Members' name. Settlement, §§ 30(h), 30(i);.

## V.    NOTICE PROCESS, OBJECTIONS AND EXCLUSIONS

Plaintiff's motion for preliminary approval designates CPT Group, Inc. as the settlement administrator in this case.  The Settlement provides that CPT shall send the Notice of Settlement of Class Action (the "Notice") by first class mail to the last known addresses of Class Members.  Settlement, § 36.

On January 8, 2024, CPT received from Defendant a computerized list of 782 Class Members.  CPT Decl., ¶ 5.  CPT formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service.  CPT Decl., ¶ 6.

On January 16, 2024, CPT caused the Notice to be printed and mailed to the 782 names on the original class list.  CPT delivered the Notices to the United States Post Office.  CPT Decl., ¶ 6.

Since the mailing date, CPT received 38 re-mail requests from Class Members.  After conducting a thorough search to locate a current mailing address using Accurint, CPT then re-mailed Notices to these Class Members. CPT Decl., ¶ 8-9.

Moreover, since mailing the Notices to the Class Members, only 17 Notices have been returned by USPS to CPT as bearing undeliverable addresses.  CPT Decl.,

¶ 7.

The postmark deadline for filing requests for exclusion, objections to the settlement, and disputes of the employment information provided in the Notice was February 15, 2024.  To date, CPT has received two (2) opt-outs, approximately .26% of the entire Class. CPT Decl., ¶ 11.  Said differently, 99.74% of the Settlement Class has elected to participate in the settlement. More importantly, while CPT has received two (2) separate objections from the Settlement Class, the objections themselves are incomplete and do not provide any basis to substantiate the reason for the objection. CPT Decl., ¶ 12.  Outreach efforts by CPT to these Class Members has also not resulted in any meaningful response to explain the basis for the objections. *Id*.  Class Counsel is of the opinion that the objections lodged may have been made in error and given the incompleteness should render the objections invalid. Boyamian Decl. ¶ 36.  CPT has also not received any contested disputes concerning any of the Class Members' employment information.  CPT Decl., ¶¶ 8-11.

## VI.  **LEGAL ARGUMENT**

### A.  **The Settlement Meets the Criteria for Final Approval.**

Courts strongly favor settlement, particularly in complex class actions.  *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276; *see also Churchill Vill., LLC. V. Gen. Elec.* (9th Cir. 2004) 361 F.3d 566, 576.  Approval of a class action settlement rests in the sound discretion of the trial court.  *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026.

In determining final approval, the court's inquiry is whether the settlement is "fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2).  A class action settlement meets this standard when "the interests of the class are better served by the settlement than by further litigation."  Manual for Complex Litigation (Fourth) § 21.61 (2004).  Rule 23(e)'s primary concern is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due

regard by the negotiating parties." *Ma v. Covidien Holding, Inc.* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359, *4.  However, rather than reaching any conclusions on the contested legal and factual issues, a court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Villegas v. J.P. Morgan Chase & Co.,* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704, *15-16.

In deciding whether a class action settlement is fair, adequate and reasonable, courts in the Ninth Circuit consider the following factors: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 963 (overruled on other grounds).

As discussed below, these factors weigh heavily in favor of final approval because the benefit of a considerable non-reversionary financial recovery of $1,000,000 distributed to 780 Class Members outweighs the risks, costs and delays inherent in further class action litigation.

### 1.    The Settlement is Fair Given the Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Litigation.

The first, second, and third *Rodriguez* factors all support final approval of this Settlement.  As to the first prong, Plaintiffs face the difficult task of proving that Defendant violated specific and separate sections of the Labor Code, including but not limited to, minimum wage, overtime, meal and rest period laws, reimbursement laws, and the wider protections of California Labor Code § 1171. Through the assistance of Plaintiffs, Counsel for Plaintiffs was able to receive significant

corroboration as to the merits of those violations.  However, the uncertainty over whether Plaintiffs will be able to achieve class certification and the appropriateness of class treatment, and whether Plaintiffs will be able to prove the asserted labor code violations make this $1,000,000 settlement amount for 780 Class Members a genuinely "fair, adequate, and reasonable" result.

The second *Rodriguez* factor also supports the final approval of this settlement.  When the parties reached the instant settlement, the present suit was stayed pending the outcome of Defendant's forthcoming appeal to the Ninth Circuit following the denial of their Motion to Compel Arbitration.  An appeal would necessarily entail a significant delay of time and resources for any potential towards a class wide recovery.  More alarming is if the Ninth Circuit reversed this Court's decision on Defendant's Motion to Compel Arbitration, 780 settlement class members would be foreclosed from receiving any type of class action relief.  If the Ninth Circuit affirmed this Court's Order, Plaintiffs would then be tasked with filing their motion for class certification. If Plaintiffs then prevailed, Defendant would likely have brought a motion to decertify the class or move to appeal that order.  If the Court was inclined to grant Defendant's motion for decertification, Plaintiffs would have attempted to rectify any deficiencies and bring a renewed motion for class certification.  If that likewise was unsuccessful, then 780 class members would not partake in the relief obtained today.

After the certification issue is determined, it is likely that Defendant, would have brought motions for summary adjudication/judgment.  Much of this pre-trial litigation would entail multiple briefs and responses from both parties.  The summary judgment process itself would take several months, if not a full year, to complete.

As to the merits of the class claims, most notably, Plaintiffs and Class Members faced a real daunting possibility that their meal and rest breaks were barred on the basis of preemption by the Federal Motor Carrier Safety Administration Order

on December 28, 2018. Similarly, Defendant would also have grounds to contest
through a dispositive motion as to whether Plaintiffs and Class Members are owed
any overtime wages due to the fact that drivers may be required to drive out-of-state
and therefore are exempt from state and overtime laws.

Should litigation resume, the parties would also have to complete remaining,
outstanding discovery before the above motion practice could resume.

Moreover, if this case ultimately reaches trial, the trial process itself is likely
to be long and complicated.  As Plaintiffs allege claims for numerous violations,
including unpaid minimum and overtime wages, meal break violations, rest break
violations, unreimbursed expenses, and unfair competition, the trial length would be
significant.

Finally, the third *Rodriguez* factor also favors approval of the instant
settlement.  While Plaintiffs are confident that the facts of this case are such that
class treatment is appropriate, there is some risk that trial will reveal this to not be
the case.  In particular, Plaintiffs' investigation and the discovery conducted thus far
showed that Defendant imposed common policies, whether formally or through a
course of conduct, where violations of the Labor Code was systemic and uniform.
Nevertheless, if trial testimony reveals that Class Members had the freedom to
exercise independently to Defendant's policies and practices, that Class Members
utilized practices that was distinct and separate to the practices in place at one of the
two distribution centers or terminals Shamrock operated in California, class
treatment in such a scenario may become untenable.  Put differently, if trial
testimony shows variance over how Class Members recorded time worked, breaks
taken, schedules, management style at each of the terminals, the suit may then be
deemed inappropriate for class treatment.

Lastly, it is worth emphasizing that the FMCSA published an Order
concluding that California's meal and rest break rules, codified in California Labor

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Code sections 226.7 and 512 and sections 11 and 12 of IWC Order 9-2001, are preempted, under 49 U.S.C. 31141(c), as applied to property-carrying commercial motor vehicle (CMV) drivers covered by the FMCSA's hours of service regulations. This Opinion served as a complete reversal to the FMCSA's December 24, 2008 decision on the (lack of) preemption of California's meal and rest break laws.  This Opinion also is believed to have retroactive effect as the FMCSA's March 22, 2019 Legal Opinion of the Office of the Chief of Counsel provided that "FMCSA [P]reemption [D]ecision under Section 31141 precludes courts from granting relief pursuant to the preempted State law or regulation at any time following issuance of the decision, regardless of whether the conduct underlying the lawsuit occurred before or after the decision was issued, and *regardless* of whether the lawsuit was filed before or after the decision was issued." (Emphasis added).   The bulk of Plaintiffs' claims and damages calculations all centered on Plaintiffs and Class Members' claims for meal and rest break premium pay. If the Court ruled in favor of Defendant, Plaintiffs and Class Members would recover nothing for their meal and rest break claims.

Had the parties not reached this global compromise, Plaintiffs and Class Members would receive very little, if close to nothing.

### 2. <u>The Settlement Consideration and Allocation are Fair.</u>

CPT Group has preliminarily calculated the class member settlement awards based on the current Net Settlement Sum of $572,166.67 and 780 participating Class Members.  The settlement awards were calculated by dividing the Settlement Class Member's Covered Workweeks during the Class Period to the total Covered Workweeks of all the Settlement Class Members during the Class Period and then multiplying that figure to the Net Settlement Sum.  The total value of Covered Workweeks attributable to Class Members who do not become Participating Claimants will be added back into the Settlement Pool and divided among each

Participating Class Member.  This pro-rata share formula to calculate individual settlement awards for the class claims will also be utilized to calculate PAGA payments based on the pay periods worked by PAGA Employees during the relevant PAGA Period. Settlement, §§ 30(h) & 30(i), Exh. 1 to Boyamian Decl.

Based on the above calculations, the average claim value for 780 participating Class Members with a $572,166.67 Net Settlement Amount is $744.46, and the highest individual settlement payment to be paid will be approximately $2,378.14, which will be paid to 97 class members. CPT Decl., ¶ 15.

"[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas*, 2012 U.S. Dist. LEXIS 166704 at *16. (internal quotations and citations omitted).

Case law demonstrates that this fractional recovery may be fair and reasonable depending on the circumstances of the case.  *See Balderas v. Massage Envy Franchising, LLC* (N.D. Cal. July 21, 2014) 2014 U.S. Dist. LEXIS 99966, *16 (preliminarily approving settlement "on the low end of the spectrum for class settlement awards receiving approval" where gross settlement amount of $504,000 "represents roughly eight percent of the maximum recovery" and net settlement amount of $325,000 represents "just five percent."); *O'Sullivan v. AMN Services, Inc.* (N.D. Cal. Feb. 7, 2014) 12-cv-2125 (ECF No. 92) ($3 million gross settlement amount for a class of 11,685 people – total exposure estimated for the case was $108 million, before penalties and interest);  *Scott v. Bimbo Bakeries USA* (E.D. Pa. March 5, 2014) No. 2:10-cv-03154 (ECF No. 174) (approving settlement of wage and hour claims alleging independent contractor misclassification for payments of $900 to each current driver and $450 to each former driver); *Bautista v. Harvest Management Sub* (C.D. Cal. July 7, 2014)  No. 2:12-cv-10004 (ECF No. 79) (final

approval of a $2.2 million gross settlement amount for wage-and hour violation claims of 14,000-member class).[3]

"[It] is not uncommon for a class action settlement to amount to approximately 10% of the total potential value." *Ma*, 2014 U.S. Dist. LEXIS 76359, at *2 (finding that settlement providing 9.1% of the "actual likely recovery" is within the range of reasonableness'"). This is reasonable given the strength of Plaintiffs' claims and the risks, expenses, and complexity of continued litigation as described above. Boyamian Decl., ¶¶ 20-36.

The plan of allocation is also fair and reasonable. The Settlement provides that the settlement fund shall be allocated based, for all intents and purposes, the length of employment.

### 3. <u>The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arms-Length Negotiations Conducted After Extensive Discovery and Investigation.</u>

The fifth and sixth factors—the informed views of counsel and the discovery conducted to date in the litigation—also support final approval of the Settlement.

Prior to filing the complaint, Class Counsel engaged in legal research regarding the potential claims and defenses in the case. Further, Class Counsel investigated the factual basis for the claims through conversations and meetings with Plaintiffs, and by evaluating numerous documents provided by Plaintiffs. Boyamian Dec., ¶¶ 9-10, 37-38.

More significantly, Class Counsel embarked on a survey campaign collecting nearly 100 completed surveys from Class Members detailing their work and experience while employed by Shamrock and also reached out to numerous putative class members in order to secure their cooperation and ultimately declarations in

---

[3] It is important to note that in these cases, the courts considered the gross settlement amount, not the net settlement amount, as is done here.

support of a motion for class certification. While Plaintiffs were prepared to bring forth a comprehensive motion for class certification, Defendant effectively stayed this matter pending their appeal of this Court's denial of Shamrock's Motion to Compel Arbitration. If Plaintiffs were successful at the appellate level, Defendant's intended to file motions to dismiss or motions for summary adjudication/judgment which had the potential to be dispositive to Plaintiffs' alleged claims of meal and rest break violations. As noted above, the meal and rest break claims were the bulk of Plaintiffs' overall damages sought against Defendant. Boyamian Dec., ¶¶ 25-27, 29. The parties therefore entered settlement negotiations with a thorough understanding of the strengths and weaknesses of their respective cases.

Class Counsel are experienced in class action litigation and focus on employment wage and hour matters. Boyamian Dec., ¶¶ 2-7. Under these circumstances, Class Counsel's assessment that the Settlement is fair, adequate, and reasonable is worthy of deference. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 4. The Lack of Meaningful Opposition by the Class Supports Approval.

"It is established that the absence of a *large* number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F. Supp. 2d 1036, 1043 (internal citations omitted) (emphasis added).

As described above, pursuant to the Court's preliminary approval order, CPT mailed the Notice to all Settlement Class Members identified through the data provided by Defendants. CPT Decl., ¶¶ 8, 11. The deadline to object to the Settlement and the deadline to opt-out from the Settlement was February 15, 2024.

CPT Decl., ¶¶ 8, 10-11. To date, CPT has received zero valid objections and only two (2) valid opt-outs to the Settlement. CPT Decl., ¶¶ 11-12. While CPT was in receipt of two (2) objections (CPT Decl., ¶ 12), one objection was subsequently rescinded and the other objector has failed to provide any reason, basis, or justification for the purported objection. The forms accompanying the Notice clearly provide that the Objection Form must be completed in its entirety in order to be deemed valid. Class Counsel is therefore of the opinion and conclusion that the remaining objection should be deemed invalid and effectively null and void. Boyamian Dec., ¶ 37.

A 99% participation rate and essentially a "zero" 0% objection rate supports the view that the Settlement is fair and reasonable. *Barcia v. Contain–A–Way, Inc.* (S.D. Cal. 2009) 2009 U.S. Dist. LEXIS 17118, *12 (absence of objectors "strongly supports the fairness, reasonableness, and adequacy of the settlement").

**B.    <u>Confirmation of the Court's Provisional Class Certification is Appropriate</u>**

Plaintiffs also request that the Court confirm its provisional certification order and find that the proposed Settlement Class meets all the requirements under Rule 23. Specifically, Plaintiffs ask the Court to finally certify the following class for settlement purposes:

> all current and former non-exempt employees employed by Shamrock as Delivery Drivers, or any other similarly titled non-exempt, hourly position, in California from August 5, 2018 through December 21, 2023 (the "Class Period").

The provisionally certified class satisfies each of the certification requirements that: (1) the individuals in the settlement Class are so numerous that joinder would be impracticable (780 settlement Class Members); (2) there are common questions of law or fact common to the class; (3) Plaintiffs' claims are typical of the claims of the absent settlement class members; and (4) Plaintiffs and their counsel will adequately and fairly represent the interests of the absent settlement class members. *Hanlon,*

150 F.3d at 1019; ECF No. 47, 6.  In addition, Plaintiffs have established that the Class is maintainable under Rule 23(b)(3) because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3);  ECF No. 47, 6-7.  Accordingly, Plaintiffs request that the Court finally certify the class for settlement purposes under Rule 23.

### C.  **The Court-Ordered Notice Program Is Constitutionally Sound.**

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a propos[ed settlement]."  Fed. R. Civ. P. 23(e)(1) Fed. R. Civ. P. 23(e)(1).  Class Members are entitled to receive "the best notice practicable" under the circumstances.  *Burns v. Elrod* (7th Cir. 1985) 757 F.2d 151, 154.  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (internal citations omitted).  Moreover, notice that is mailed to each member of a class "who can be identified with reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 177.  For any certified Rule 23(b)(3) class, the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

The final Notice, submitted as Exhibit B to the Settlement, explains the nature of the action and the terms of the Settlement (including the Settlement Amount, how individual Settlement awards will be calculated, the attorneys' fees to be paid, the claims that will be released).  It also explains how the Class Members may receive a portion of the Settlement, be excluded from the Settlement, or object to the Settlement.  As to the latter two items, the Notice also includes an (1) Opt-Out Form, and (2) Objection Form as ordered by the Court. (Dkt. 67)  This information satisfies

Rule 23(e).  *See, e.g., Villegas* 2012 U.S. Dist. LEXIS 166704, at * 23 (approving a notice containing the same categories of information).

The notice plan provided for in the Settlement and approved by the Court in its Dec. 21 Order satisfies the notice standard for all persons who were mailed notice. Class Counsel formatted this Notice in an easy-to-read manner.  The Notice encouraged Class Members to contact the Settlement Administrator or Class Counsel with any questions and provided their telephone numbers, mailing addresses, and/or web contact information.  Boyamian Decl., ¶ 36, Ex. 1-B.

Accordingly, the Notice and Notice plan fulfilled all requirements of adequate notice and should be duly approved.  *See Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1374-75; Fed. R. Civ. P. 23(c)(2).

## VII.  CONCLUSION: THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THIS SETTLEMENT

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Respectfully Submitted,

Dated: March 1, 2024          BOYAMIAN LAW, INC.

By:   /S/ Michael H. Boyamian
      MICHAEL H. BOYAMIAN
      Attorneys for Plaintiffs and the Putative Class

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 550 North Brand Boulevard, 15th Floor, Glendale, California 91203.  On March 1, 2024, I served, in the manner indicated below, the foregoing document described as:

5

6

7

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**

on the interested parties in this action as follows:

8

9

10

11

12

13

**FISHER & PHILLIPS, LLP**
Andrew J. Sommer (SBN. 192844)
Ariella Kupetz (SBN. 332736)
Email: asommer@fisherphillips.com
Email: akupetz@fisherphillips.com
444 S. Flower Street, Suite 1500
Los Angeles, CA 90071
Telephone: (213) 330- 4500

Attorneys for Defendant SHAMROCK FOODS COMPANY

14

15

16

_____  BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Glendale, California, with postage thereon fully prepaid.  I am readily familiar with the firms's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to (C.C.P. §1013(c)(d)).

17

18

_____  BY FACSIMILE:  caused such document to be transmitted via facsimile to the offices of the addressee(s).  (C.C.P. § 1013(a)(e)(f)).

19

20

_____  BY OVERNIGHT DELIVERY: I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressee(s). (C.C.P. §1013(c)(d)).

21

  X   BY ELECTRONIC SERVICE: by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth above.

22

23

  X   STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

24

_____  FEDERAL: I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

25

26

Executed on March 1, 2024 at Glendale, California.

27

_____
Cynthia Parra

28

-1-

PROOF OF SERVICE